UNITED STATES, Appellee

v

CLARENCE MORRIS, JR., Private First Class, U. S. Marine Corps, Appellant

9 USCMA 37, 25 CMR 299

No. 10,790

Decided March 14, 1958

*Major R. D. Humphreys*, USMC, was on the brief for Appellant, Accused.

*Commander Craig McKee*, USN, was on the brief for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was tried and convicted of sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925. At the trial, one of the contested issues was the voluntariness of a pretrial statement which the accused gave to an agent of the Office of Naval Intelligence. The accused took the stand to testify on that issue.

According to the accused, when the interrogation began, he was asked about the act of sodomy and denied that he had committed it. Thereupon, the agent told him that he would "make it hard" for him if he did not talk. At first the accused did not know what the agent meant. However, after a while, the agent began to talk about an undesirable discharge. He "explained" to the accused that a discharge of that kind "was nothing more than an honorable discharge" which would entitle him to "all . . . [his] GI benefits." Finally, the agent told the accused that he had a "statement signed by a person saying" that the accused had committed the offense alleged. As a result, the accused was "pretty well shook up." Eventually, he signed a statement presented to him by the agent even though he "felt that I didn't do anything."

In his final instructions, the law officer advised the court-martial it could consider the question of voluntariness of the accused's pretrial statement to determine "the weight, if any" it would give to it. Defense counsel requested an instruction to the effect that if the court-martial believed the statement was involuntary, it must "disregard . . . [it] entirely." The instruction was refused.

After careful consideration of the evidence, we conclude that the voluntariness of the accused's statement was definitely put in issue. The court-martial might find that the agent improperly compelled the accused to choose between signing the statement and getting an undesirable discharge, which would entitle him to all his "GI benefits," and refusing to sign, which would subject him to trial by court-martial on a charge of sodomy. The law officer, therefore, was correct in submitting the matter to the court-martial for its determination. His refusal to give the substance of the requested instruction was prejudicial error. United States v Schwed, 8 USCMA 305, 24 CMR 115; United States v Jones, 7 USCMA 623, 23 CMR 87.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

I believe the Court is veering away from a very substantial body of law on instructional errors. As I understand our pronouncements in this field, before an instruction on a confession is deemed prejudicial, the issue of voluntariness must be raised reasonably. That rule requires that there be some causal connection between the coercion, inducement, or promise and the resultant statement. A confession, to be inadmissible, must be one induced by some act of a serious or substantial nature which would operate to impair the accused's freedom of will. Not

every statement in the nature of a threat, promise, or inducement will vitiate an extrajudicial statement of guilt. Certainly, the force of the pressure used must be such that there is a fair probability that the accused confessed to guilt of a crime he did not commit. We have written a series of cases dealing with this subject which may be swept away without mention by this holding. I salvage from the heap United States v Colbert, 2 USCMA 3, 6 CMR 3, for its facts are similar to those in the case at bar, and Judge Brosman, in a carefully written opinion, discussed the principles in detail. I quote from that decision which expressed the views of a unanimous Court:

"We note, first, that in this record there is no evidence of interminable periods of questioning, no evidence of physical abuse, and no evidence of more subtle exertions of compulsion. There is, in short, nothing even smacking of the 'third degree.' A mere admonition to tell the truth could hardly vitiate a confession it might produce. Sparf and Hansen v. United States, 156 US 51, 54–56, 39 L ed 343, 15 S Ct 273. However, the statement made to petitioner respecting perjury and its consequences was something more than a simple admonition. It was more nearly in the nature of a threat, yet was not a *threat* in the ordinary sense. However, the present problem does not demand that we define precisely the nature of the statement made to petitioner, but rather requires that we appraise its effect. Was the nature of the statement such that there is any reasonable likelihood that it would so constrict the will of petitioner that he might have been induced to confess guilt of a serious crime which he did not commit? We think not. The record contains substantial evidence from which the law member and the court-martial might conclude, as they did, that the reference to perjury by the investigator was not an action of sufficient persuasion to extract an involuntary confession of questionable veracity. Nor do we think that a conviction based on that confession

violates military due process. We see nothing whatever in the circumstances surrounding its procurement to suggest 'fundamental unfairness.' Lisenba v. California, 314 US 219, 236, 86 L ed 166, 62 S Ct 280.

"It must be understood that 'voluntary' as used in law with respect to a confession is in no way synonymous with 'spontaneous.' The term does not at all connote that a confession, to be admissible, may not have been extracted from the defendant by searching examination and the use of prodding questions. Rather it means that the confession must be the product of free choice—of a will not encumbered or burdened by threats, promises, inducements, or physical or mental abuse. Moreover, the threats, promises, or inducements which may be held to have produced an involuntary confession must be of such a serious or substantial nature that they could possibly have operated to impair the defendant's freedom of will. There is no doubt in our minds that the confession involved here was the product of an entirely free choice."

In the case at bar, the evidence on the issue is not complex. The record shows undisputedly that the accused was warned of his rights under Article 31 of the *Code* and knew that he was perfectly at liberty to remain silent. There was no evidence of physical abuse and no evidence of more subtle forms of compulsion. The accused sets up three pieces of evidence which he argues equal compulsion. He first states the investigating officer said, "I'll make it hard for you, if you don't tell me." But, when asked how he interpreted that statement, he replied he did not know what the investigating officer meant. He next refers to some discussion about an undesirable discharge. The effect and materiality of that information escapes me, for the investigator merely asked the accused if he desired that type of discharge. The reply was in the negative, and the investigator explained it was similar to an honorable discharge in the respect that he would retain his GI rights. The last bit of evidence was that the interviewer said he possessed

**39**

a statement signed by a person which included information showing the accused had committed the offense.

I find nothing in the last two pieces of evidence which could possibly be influential in causing an accused to confess to a crime of this nature. These comments of the interrogator evince neither promise nor threat. The accused was informed of existing conditions, but there · is nothing about the statements which would tend to produce a confession regardless of guilt. That leaves for consideration the effect on the accused of the statement that the investigator would make it hard for him. That must be considered in the light of other facts and circumstances and the knowledge by the accused that he need not say anything. There was a naval yeoman available who typed the statement and, from accused's version of the incident, I gather he first confessed orally and then the confession was reduced to writing. If the statement of the agent was a threat of sufficient importance to compel an involuntary disclosure, then accused was unaware of its inducing characteristics. He testified he did not know what the investigator meant. But, at the time of the conversation and when he signed the statement in the presence of the third party, he must not have considered it coercive, for he acknowledged that there had been no threats made or inducements offered. Moreover, his testimony would indicate that the overall period of time he was in the presence of the investigator was short and few questions were propounded. In addition, not once did he express the view that he was coerced, forced, importuned, or misled into giving the oral statement or signing the written document. The record indicates he came to the office of the agent, listened to the warning, acknowledged he understood his rights and then without extensive questioning gave his statement. The only piece of evidence in dispute is the one statement hereinbefore quoted, and its effect, if any, would be trifling. Therefore, if the accused was influenced to talk against his best interest, he was induced to do so by his conscience and not by the alleged threat of the agent.

I would affirm the decision of the board of review.