UNITED STATES, Appellee

v

ELWOOD D. McKAY, Private First Class,
U. S. Marine Corps, Appellant

9 USCMA 527, 26 CMR 307

No. 11,238

Decided August 1, 1958

*Major R. D. Humphreys* argued the cause for Appellant, Accused.
*Major Charles R. Larouche* argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted of five thefts, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for eighteen months, with a reduction in grade. The convening authority mitigated the sentence, approving only a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year, and the reduction. The board of review affirmed. This Court granted the accused's petition for review to consider whether his pretrial confession was, as a matter of law, involuntary in that it was the product of a threat allegedly made by an agent of the Government.

These are the facts germane to the granted issue. One of the larceny victims had observed the accused taking certain personal belongings from his footlocker without permission. Shortly afterward, he, in company with the duty noncommissioned officer, recovered the items from the accused's footlocker. The victim registered a complaint with a criminal investigator in the office of the Provost Marshal, and the accused was interviewed. First he read the provisions of Article 31, Uniform Code of Military Justice, 10 USC § 831, which had been furnished him, and then its provisions were reread and explained to him by the interrogator. The accused assured the latter that he fully understood his rights therein. Nevertheless, the interview resulted in an oral confession of the one known theft and all other crimes with which the accused was subsequently charged. The foregoing facts were elicited from the investigator at the accused's trial and not disputed by the latter. In addition, the interrogator testified that he had neither exerted coercion upon the suspect nor made threats or promises to him, and that in his opinion the confession had been delivered voluntarily. With the latter part of this testimony the accused took issue, testifying that the agent advised him it would be better to tell the truth because he had been caught in the possession of the goods that were stolen from the victim and if he did not tell the truth, the investigator would use the results of a lie detector test against him in court. The accused further testified he confessed because he was afraid of what the test results would show.

The law officer admitted the confession into evidence over the objection of defense counsel that it was involuntarily obtained. His ruling was supported by the testimony of the investigator plus his conclusion that the suggested use of a polygraph in this instance had not impaired the accused's

mental freedom because of uncontradicted evidence that the accused was advised and aware he did not need to say anything unless he so desired.

At the close of the trial, the issue over the voluntariness of the accused's confession was submitted to the court-martial for final determination. In this instance, the law officer's charge to the court members conformed precisely with the concept of paragraph 140a, Manual for Courts-Martial, United States, 1951, specifically approved by this Court in United States v Jones, 7 USCMA 623, 23 CMR 87. This was his instruction:

> ". . . It is recognized that an involuntary statement is often untrustworthy and unreliable. Therefore, the voluntariness of the statement before you here constitutes a matter which you should consider in determining the weight, if any, that you will give to this confession. *Each member of the court in his deliberation on the findings of the guilt or innocence, may come to his own conclusion as to the voluntary nature of the statement and accept it or reject it, accordingly. You may also consider any evidence introduced as to the voluntary or involuntary nature of the statement, or as to the weight to be given to that statement.* In deciding this you should be affected in no way by the circumstances that I have admitted this statement to be received into evidence." [Emphasis supplied.]

and its propriety is not open to question.

Assuming we were to disregard the testimony of the investigator, that leaves only the question of whether the law officer erred in admitting the confession because he was required, as a matter of law, to find that the accused's confession was involuntarily induced by means of unlawful threats. United States v Colbert, 2 USCMA 3, 6 CMR 3; United States v Monge, 1 USCMA 95, 2 CMR 1.

In its normal legal connotation, the

word "threat" means an avowed present determination or intent to injure presently or in the future. As applied to the doctrine excluding involuntary confessions, it means an offer to do violence to the suspect, of a degree that there is a fair risk he was placed in such fear of his life or physical suffering as to cause him to make a false confession. See Wigmore, Evidence, 3d ed, § 833. Certainly, the facts of this case do not bring it within the ambit of those definitions. However, confessions can be coerced by other means, but the methods used to render the document inadmissible must be such that the confessor is denied the mental freedom to remain silent. Thus, in United States v Colbert, supra, we held that a law officer did not err in admitting a confession when the interrogator informed an accused he could be prosecuted for perjury if he spoke falsely.

When an accused is induced or coerced into confessing, he has been placed in a situation where he must accept his present situation and remain silent and thereby either accept the loss of the inducement or suffer the consequence if the threat is carried out, or confess so as to obtain the benefits of the inducement or escape the threatened injury. In this instance there was no inducement, so we must look to the possibility of the accused being harmed if he remained silent. Assuming a threat, it did not involve any injury, real or imaginary, to the accused for it consisted of nothing more than an avowal to test the truth of any story related by him.

Certainly, it is apparent there was no injury or harm which could come to the accused if he asserted his right to remain silent during the interrogation. But would the possibility of later employing a polygraphic apparatus, if and when the accused chose to speak, be sufficiently persuasive to cause the accused to make a statement he would not otherwise have made? We conclude it would not, for it is no more than an adjuration to speak the truth if the privilege

granted by Article 31 is not exercised and its impact ought to encourage silence.

In any event, we may assume in this instance the interrogator was employing trickery to coax the accused into telling the truth, since no preparations at all were made to connect the accused to the device and, indeed, the machine itself does not seem to have been present at any time during the interrogation. But the use of deception in obtaining a confession is not impermissible as long as the artifice was not designed or calculated likely to produce an untrue confession. Wigmore, Evidence, 3d ed, § 841. United States v Payne, 6 USCMA 225, 19 CMR 351; United States v Gibson, 3 USCMA 746, 14 CMR 164.

The authorities discussing the use of lie detectors as a form of trickery, subterfuge or compulsion in obtaining confessions are few, but those we have found do not support accused's theory. In Commonwealth v Hipple, 333 Pa 33, 3 Atl 2d 353, a confession of first degree murder was held to have been properly admitted in evidence even though a lie detector was utilized to obtain it. There, interrogators placed the device on the defendant's arm, telling him "that he could lie to the officers but that he could not lie to the machine." The Pennsylvania Supreme Court reasoned in this fashion to reach the conclusion that the confession was admissible:

". . . It may be that it was the use of the lie detector which produced the confession. This would seem certain if it were not for the fact that it was not until two hours after the use of the device, during which time defendant had time for reflection and composure, that he confessed. It is quite possible that he was persuaded to do so by the use of the machine and what the officers told him concerning it. The record of the lie detector was not offered in evidence. Since the use of the device was for the purpose of inducing the defendant to tell the truth and not anything was done to influence him to do otherwise, an objection based solely on the fact that he was thus induced to confess cannot be sustained."

In Pinter v State, 203 Miss 344, 34 So2d 723 (1948), the defendant claimed he confessed to murder because he overheard a Mr. King, who was among those officials who were taking him to jail, make reference to a lie detector which "scared him." The court placed this factual situation in its true perspective when it remarked:

". . . It would seem that his fear was not of the machine but of its capacity to elicit truth. It was therefore a fear of the truth and its consequences. A desire to anticipate, by voluntary disclosure, the supposed revelations of a 'lie detector' has its origin in the mind and conscience of the defendant, and is not an 'undue influence.' It should be added that the testimony shows that Mr. King and the others present denied references to the lie detector and the calling of defendant a liar."

In line with these authorities, we find no difficulty in deciding a law officer could find reasonably that the mere reference to the possible use of a polygraph would not breach the provisions of Article 31. The impulse of fear of what lie detector test results would show would have a tendency to prevent oral disclosure. Here the accused was not ordered to submit to an examination; no preparations were being made to use a polygraph; he knew if he remained silent he could not be tested for falsifying; and, if he was frightened about the results of a test, his fear would not cause him to abandon his privilege, it would only cause him to be concerned about the consequence if he elected to lie. Surely he was not frightened by the machine, for if he remained silent or told the truth, either there would be no test or the results would support his statement. His fright was merely his conscience warning him against falsehoods and their consequences. While we may not gauge accused's mental reaction with precision, we fail to understand how fear of being caught telling a falsehood would prompt him to cast aside his cloak of silence.

531

In summation, it strikes us that, even when we give the accused the benefit of every bit of favorable testimony, he well knew he had the choice of remaining silent, speaking and telling the truth, or speaking falsely and running the chance of being tested for the truthfulness of his statement. He elected the second alternative, and the record shows his choice to be a selection of his own will and conscience.

The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring in the result):

In my opinion, it is unnecessary to consider whether a threat to use a lie detector is a mere trick or an improper influence upon an accused sufficient to cloud the voluntariness of his confession. The matter was, in fact, presented to the court-martial by adequate instructions. See my separate opinion in United States v Schwed, 8 USCMA 305, 24 CMR 115. Accordingly, I join in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent upon two grounds.

I

I believe the investigators' statement that they would obtain and use the results of a lie detector test in court if the accused did not confess was sufficient to go to the triers of fact and from which they could find coercion under Article 31(d), Uniform Code of Military Justice, 10 USC § 831. We have no way of ascertaining what the accused believed a lie detector test to be. It might well be a nineteen-year-old private first class with a General Classification Test score of 68 would consider a lie detector to be in the nature of a truth serum. Consequently, this raises an issue of fact from which the court-martial might find that the accused's freedom of will could have been substantially interfered with. See United States v Morris, 9 USCMA 37, 25 CMR 299.

II

I further dissent upon the ground that the law officer's instruction in the present case is incorrect as a matter of law when he advised:

". . . It is recognized that an involuntary statement is often untrustworthy and unreliable. Therefore, the voluntariness of the statement before you here constitutes a matter which you should consider in determining the weight, if any, that you will give to this confession. Each member of the court in his deliberation on the findings of the guilt or innocence, may come to his own conclusion as to the voluntary nature of the statement and accept it or reject it, accordingly. You may also consider any evidence introduced as to the voluntary or involuntary nature of the statement, or as to the weight to be given to that statement. In deciding this you should be affected in no way by the circumstances that I have admitted this statement to be received into evidence." [Emphasis supplied.]

In United States v Morris, supra, the law officer gave a similar instruction and refused one requested by defense counsel that "if the court-martial believed the statement was involuntary, it must 'disregard . . . [it] entirely.'" We there held the law officer's refusal to give the requested instruction to be prejudicial error. See also United States v Wenzel, 9 USCMA 140, 25 CMR 402. We have repeatedly held that a court-martial must disregard a confession *in toto* if it is determined it was involuntarily given. United States v Schwed, 8 USCMA 305, 24 CMR 115; United States v Dicario, 8 USCMA 353, 24 CMR 163. Therefore, to instruct that the court-martial should consider the voluntariness of the statement in determining the weight, if any, that will be given to the confession as error. A court-martial may properly consider what weight to give a confession, taking into effect all of the evidence, only if it preliminarily finds the statement to be voluntary.

Consequently, I would reverse the decision of the board of review.