OLIVER, Chief Judge:
A panel of officer members, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of burglary and indecent assault, in violation of Articles 129 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 929 and 934 (1994)[hereinafter UCMJ], The appellant’s sentence consisted of a bad-conduct discharge, confinement for a period of 38 months, and reduction to the lowest enlisted pay grade. The convening authority approved the sentence as adjudged.
We have reviewed the record of trial, the appellant’s three assignments of error,[1] and the Government’s response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).
Defense Motion to Suppress the Appellant’s Confession
In the appellant’s first two assignments of error, he contends that the military judge erred by denying his motion to suppress a confessional statement he had given to an agent of the Naval Criminal Investigative Service [hereinafter NCIS] the morning after the incident which resulted in the charges of which the appellant was convicted. He suggests two grounds for relief: (1) that the confession was the fruit of an illegal apprehension; and (2) that the confession was involuntary. We conclude that the appellant is entitled to no relief on either basis.
The standard we generally apply for reviewing a military judge’s decision to deny a motion to suppress is abuse of discretion. United States v. Ayala, 43 M.J. 296, 298 (1995). In reviewing the judge’s decision, we are generally inclined to defer to his essential findings of fact on a motion to suppress evidence, but we are not bound by them. United States v. Jones, 34 M.J. 899, 905 (N.M.C.M.R.1992). In any case, we will give the trial judge’s essential findings considerable deference when they are supported by the evidence of record and are not clearly erroneous. See United States v. Cummings, 21 M.J. 987, 989 (N.M.C.M.R.1986). We consider pure issues of law de novo. Ayala, 43 M.J. at 298.
Product of an Illegal Apprehension
We will first consider the appellant’s contention that his statement was a product of an illegal apprehension. After a careful review of the record, we disagree.
Before appropriate officials can apprehend a service member, the arrest must be based on probable cause. Art. 7(b), UCMJ, 10 U.S.C. § 807(b). Probable cause exists when there are reasonable grounds to believe that an offense has been committed and the person apprehended committed it. Id.-, see Rule for Courts-Martial 302(c), Manual for Courts-Martial, United States (1995 ed.)[hereinafter R.C.M.]. Probable cause requires more than mere suspicion. United States v. Schneider, 14 M.J. 189, 194 (C.M.A.1982). Rather, it “exists where ‘the facts and circumstances within ... [the officers’] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that’ an offense has been or is being committed.” Schneider, 14 M.J. at 194 (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). An illegal *949 arrest violates the Fourth Amendment to the U.S. Constitution and statements obtained as a direct result of an illegal arrest are inadmissible at trial as a “fruit of the poisonous tree.” See United States v. Ceccolini, 435 U.S. 268, 273-75, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978)(quoting Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).
After reviewing the evidence elicited on the motion to suppress and the military judge’s essential findings of fact and conclusions of law, we are convinced that the authorities had more than adequate probable cause at the time they arrested the appellant. See Record at 241-45 (findings and conclusions), 261-62 (ruling on reconsideration). Of course, the quantum of probable cause dissipated significantly during the intervening hours. Both the victim and the victim’s husband indicated, after observing the appellant in a line-up, that he was not the man who had entered their residence, indecently assaulted Mrs. Smith, and escaped into the night. Even so, the military judge found that there remained more than enough credible information available to the NCIS investigator to conclude that the appellant likely was the perpetrator. Record at 245, 262.
First, there was no question but that a serious criminal offense had been committed. Second, there was sufficient credible information such that a criminal investigator would have reasonably believed that the appellant had committed it. Despite the unsuccessful line-up identification, the appellant matched, in most important details, the physical description of the assailant. Moreover, the authorities found him at 0300 in a recently occupied rack, still perspiring from strenuous effort, with many recent scratches and a fresh wound on his finger, in the same color PT gear as that of the assailant, with damp, dirty, and grass-stained running shoes, and within a mile or so of the site of the assault. In making this factual determination, not only did the military judge not abuse his discretion, but, after reviewing the record de novo, we are fully confident that he made the correct decision.
Because the apprehension and continued custody of the appellant was appropriate, the military judge ruled correctly that the confession could come into evidence at the appellant’s court-martial.
Involuntary Confession
The appellant next contends that his confession was involuntary. He argues that it was largely based on an inadmissible earlier statement and obtained as a “result of NCIS coercion and underhanded manipulation.” Appellant’s Brief at 18. We disagree.
Special Agent Haney, the NCIS investigator, first advised the appellant of his Art. 31, UCMJ, rights before questioning him about the offense he was suspected of having committed. See Prosecution Exhibit 8. In an effort to elicit incriminating information, however, she told the appellant that she knew he had lied to the area guard who arrested him about how he got the cut on his finger. She knew, or should have known, that the area guard had never advised the appellant of his Miranda/Tempia rights[2] when they took him into custody and questioned him. The appellant contends that his confession was derivative of this earlier unwarned statement.
The Supreme Court addressed a similar issue in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The Court held that where an accused makes an unwarned statement after he has been properly arrested and later makes a second warned statement, the second statement will not be considered the “tainted fruit” of the earlier unwarned statement. Instead of presuming that the second statement is a tainted product of the first statement, the Court focused only on whether the confession was “voluntarily made.” Id. at 316-18, 105 S.Ct. 1285. Although originally holding that Elstad did not apply where the Government agent failed to advise a member of his Article 31(b) rights, see United States v. Ravenel, 26 M.J. 344, 350 (C.M.A.1988), our superior court has since rejected any “presumptive taint doctrine” as it applies to “only a technical violation of Article 31(b).” United States *950 v. Steward, 31 M.J. 259, 264 (C.M.A.1990); see also United States v. Phillips, 32 M.J. 76, 79-80 (C.M.A.1991)(noting that while the “earlier, unwarned statement is a factor in the total picture, ... it does not presumptively taint the subsequent confession.”)(citing Elstad, 470 U.S. at 309-14, 105 S.Ct. 1285); United States v. Rodriguez, 44 M.J. 766, 775-76 (N.M.Ct.Crim.App.1996)(quoting Elstad, 470 U.S. at 309, 311-12, 314, 105 S.Ct. 1285).
After applying a totality of the circumstances test, the military judge determined that, even though the earlier statement was unwarned and therefore inadmissible, the appellant voluntarily made the subsequent, fully warned confession. Record at 246. We agree.
The appellant also contends that Special Agent Haney used underhanded tricks to extract an involuntary and untrue confession. Specifically, the agent lied to him when she told him that he had been identified by Sergeant and Mrs. Smith. He argues that he was particularly vulnerable to such tactics, having been awake for over 24 hours, had too much to drink the previous evening, and been subjected to illegal, onerous detention. We disagree.
Article 31, UCMJ, 10 U.S.C. § 831, provides that no statement obtained from a service member through the use of coercion, unlawful influence, or unlawful inducement may be received into evidence against him or her at a court-martial. If there is a timely motion to suppress, any involuntary statement may not be received into evidence. Mil.R.Evid. 304(a), Manual for Courts-Martial, United States (1995 ed.).
The voluntariness of a confession is a question of law that an appellate court must determine de novo. Arizona v. Fulminante, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L. Ed.2d 302 (1991). “The necessary inquiry is whether the confession is the product of an essentially free and unconstrained choice by its maker.” United States v. Bubonics, 45 M.J. 93, 95 (1996). When the authorities have “overborne” the maker’s will or “critically impaired” his “capacity for self-determination,” use of the confession in a court-martial would offend due process. Id. (citing Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)). The burden of proof is on the Government, “as the proponent of admission of the evidence, to prove by a preponderance of the evidence that the confession was voluntary.” Bubonics, 45 M.J at 95 (citations omitted). See Mil.R.Evid. 304(e). In determining whether a confessional statement is voluntary, military courts must look to the “totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation.” Bubonics, 45 M.J. at 95 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).
The military judge heard considerable evidence on the motion to suppress. Much of the focus was on the condition of the appellant on the morning after the incident and the details of the interrogation Special Agent Haney conducted. While the military judge found “disturbing the outright lie” the agent told the accused that the Smiths had identified him in the line-up, he correctly noted that “the law is that trickery does not necessarily render a statement involuntary.” Record at 246. “The use of deception in obtaining a confession is not impermissible as long as the artifice was not designed or calculated likely to produce an untrue confession.” United States v. Thrower, 36 M.J. 613, 614 (A.F.C.M.R.1992) (citations omitted); see United States v. McKay, 9 C.M.A. 527, 26 C.M.R. 307, 311, 1958 WL 3365 (1958); see also United States v. Melanson, 15 M.J. 765, 767 (A.F.C.M.R.1983)(holding that repeated references to a non-existent videotape of the accused having committed the crimes “is a permissible weapon in the interrogator’s arsenal.”)
The military judge factored this artifice, along with the other evidence introduced on the motion, into his “voluntariness calculus” to determine that the confession was voluntary and the appellant’s will was not overborne. Record at 246. In our view, the trial judge’s assessment of the confession and its surrounding circumstances as voluntary was clearly supportable in law and fact. Indeed, we find it “incredible to believe” that *951 this experienced, successful, and self-confident Marine drill instructor could be persuaded to falsely admit to committing these offenses. See United States v. Anderson, 47 M.J. 576, 581 (N.M.Ct.Crim.App.1997). We adopt the military judge’s essential findings, and conclude that the appellant’s confession was voluntary and, therefore, properly admitted against him.
Evidence of Guilt
In his third assignment of error, the appellant contends that the evidence was factually insufficient to support the findings of guilty of the offenses of which he was convicted. After carefully reviewing the record and applying the standard for factual sufficiency our superior court has articulated in United States v. Turner, 25 M.J. 324, 324-25 (C.M.A.1987), we strongly disagree.
While the appellant spends considerable effort, as he did at trial, to establish a time-line for the early morning hours of 7 December 1995 such as to make his commission of these offenses improbable, we are not persuaded. The recollections of witnesses approximating when certain events took place, particularly in the early morning after having consumed considerable quantities of alcohol, is suspect. Moreover, the appellant pins much of his theory on the representation in his confession that he “walked” from the barracks to his victim’s residence. See Prosecution Exhibit 9. Had he run or jogged over, perfectly reasonable in that he was wearing PT gear and was a Marine drill instructor in top physical condition, the time-line problem largely disappears.
The appellant also argues reasonable doubt based on the inability of either Sergeant or Mrs. Smith to identify him as the perpetrator. We see this problem as one of fallible witnesses, whose ability to identify the appellant was compromised by inadequate lighting, the stress of the event, and the oversized sweatshirt the appellant was wearing. Even though they were unable to identify the appellant, their description was reasonably consistent with how the appellant would have appeared to them as he committed the crimes and then escaped into the night.
Finally, the appellant suggests that we cannot rely on these findings because of the “complete lack of credibility” of Special Agent Haney. Appellant’s Brief at 27. While the agent was effectively cross-examined, we are confident that the members considered the overall weight and credibility of her testimony, along with all the other evidence, in reaching an appropriate verdict.
In focusing on these three areas of concern, the appellant overlooks the compelling mountain of incriminating evidence against him. Foremost, of course, is his detailed confession. Prosecution Exhibit 9. As discussed above, we are confident that he made it voluntarily and that it was largely accurate. Moreover, the appellant was discovered, in a rack that had not been occupied 20-30 minutes earlier, sweating as though “he had just got done with PT.” Record at 676; see id. at 664. Numerous witnesses testified that he had fresh scratches on his legs, as though he had been running through brush, and that he had a deep laceration, still oozing blood, on his left index finger. See Prosecution Exhibits 10-13 (photographs). This wound was consistent with the testimony of Mrs. Smith, who testified that she had bitten the appellant on the finger as he was assaulting her, as well as the appellant’s confession to the same effect. Record at 400; Prosecution Exhibit 9. While the investigation was not as comprehensive as it might have been (e.g., no forensic comparison of the bite marks, fingerprints, or DNA evidence was introduced), nothing requires that the Government investigate and present a perfect ease.[3]
After reviewing the record carefully, we are completely confident that the evidence *952 establishes the appellant’s guilt beyond a reasonable doubt.
Conclusion
Accordingly, we affirm the findings and the sentence, as approved on review below.
Judge ANDERSON and Judge ROLPH concur.

. I. THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS CONFESSION BECAUSE IT WAS THE FRUIT OF AN ILLEGAL APPREHENSION.
II. THE MILITARY JUDGE ERRED IN DENYING APPELLANT’S MOTION TO SUPPRESS HIS INVOLUNTARY CONFESSION WHICH WAS THE RESULT OF NCIS COERCION AND UNDERHANDED MANIPULATION.
III. THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SUPPORT A FINDING OF GUILTY TO CHARGES I AND III.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Tempia, 16 C.M.A. 629, 37 C.M.R. 249, 1967 WL 4235 (1967).

. Moreover, had there been exculpatory evidence available, such as expert testimony that Mrs. Smith’s teeth pattern could not have produced what appeared to be bite marks on the appellant’s left index finger, we are confident that the defense team would have produced it. As it was, the Government's case was overwhelming.