UNITED STATES, Appellee,

v.

Specialist Steven J. ERIE, 475–86–3535,
United States Army, Appellant.

ACMR 8802322.

U.S. Army Court of Military Review.

17 Jan. 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Marion E. Winter, JAGC (on brief).

For Appellee: Colonel A.F. Arquilla, JAGC, Major Kathryn F. Forrester, JAGC, Major Gary L. Hausken, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before DeFORD, KANE, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Pursuant to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of wrongful use of cocaine, wrongful use of methamphetamine, wrongful distribution of cocaine (three specifications), and wrongful distri-

bution of methamphetamine (four specifications) all in violation of Article 112a of the Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. III) [hereinafter UCMJ]. His approved sentence included a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

The appellant's guilty pleas were conditionally entered in order to preserve a motion to suppress two separate statements by the appellant, one rendered on 6 May 1988, the other on 12 May 1988. *See generally* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 910(a)(2).[1] This motion stated alternate grounds: first, that the rights warning did not adequately apprise appellant of the nature of the offense under investigation as required by Article 31(b), UCMJ[2], 10 U.S.C. § 831(b); and, second, that his waiver of the codal and constitutional rights under Article 31(b), UCMJ, and *United States v. Tempia*[3] was the product of either unlawful inducement or unlawful influence and that his statements were therefore involuntary and thus inadmissible. The appellant now relitigates these matters before this court. We hold that the rulings of the military judge were correct albeit on different grounds and affirm the findings of guilty and the sentence.

### I

The following facts were not in dispute at trial. The appellant, his wife and a French national named Jean Francois Plateau shared an apartment in Wolsfeld, Germany. Plateau had been identified by German and French police authorities as an international drug trafficker. When they discovered that he shared an apartment

---

1. This rule permits an accused to enter a conditional plea of guilty with the approval of the military judge and the consent of the Government which reserves the right to appellate review of any specified pretrial motion.

2. Article 31, UCMJ, provides in pertinent part: No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without *first informing him of the nature of the offense of which he is accused or suspected*

and that any statement made by him may be used as evidence against him in a trial by court-martial.
Article 31(b), UCMJ (emphasis added). The requirement for advice as to the nature of the offense under investigation is unique to military justice. *See Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987).

3. *United States v. Tempia*, 37 C.M.R. 249 (C.M.A. 1967).

with an American servicemember, they decided to involve American military authorities in the investigation. On 5 May 1988, French and German police authorities together with a military police investigator, Sergeant John T. Stroud, raided the apartment.

Plateau was arrested and the apartment searched. Hashish was found in the bedroom of the appellant. The appellant was apprehended by German police authorities and questioned about his involvement with Plateau. The appellant told German investigators that he was not trafficking in drugs. The appellant was then released "so he could go home and get some sleep."

On 6 May, Investigator Stroud had the appellant brought in for an interview. At that time, Investigator Stroud advised the appellant of his rights as required by *Tempia* and Article 31(b), UCMJ. This advisement included notice that the appellant was suspected of wrongful use of hashish. The appellant waived his rights and rendered a sworn statement denying any knowledge of the presence of hashish in the apartment. He stated that the hashish belonged to his wife. However, he did admit that he had previously used hashish on 27 September 1988, but stated that he had "turned myself in for the Drug and Alcohol Program on the 29th of March [1989]."

Investigator Stroud testified that the parties then entered the "second segment" of the interview. The appellant's battery commander, Captain (CPT) Eugene P. Paulo, participated in this portion of the interview. Investigator Stroud did not intend to obtain additional inculpatory statements from the appellant during this "segment." He and CPT Paulo asked the appellant to identify other members of the appellant's unit who were using controlled substances. The appellant cooperated and identified several individuals as users of hashish, cocaine, and methamphetamine. Investigator Stroud asked the appellant, "How do you know?" The appellant replied that he had provided these individuals with the drugs.

With this admission, Investigator Stroud suspected that the appellant may have been involved in distributing controlled substances. He halted the interview and sought guidance from a more experienced investigator as to whether he was legally required to readvise the appellant of his rights for the offense of distribution of controlled substances. The agent told him that readvisement was not necessary. Investigator Stroud resumed the interview smiling and telling the appellant, "I should probably advise you of your rights for distribution, but let's go ahead and continue."

The appellant then admitted that he had distributed and used controlled substances which he had obtained from Plateau. He admitted using both cocaine and methamphetamine. He also admitted numerous distributions of cocaine and methamphetamine to eleven individuals.

On 12 May, Investigator Stroud and a special agent of the CID decided "that a reinterview [of the appellant] would be necessary to clarify other details concerning the statement we got before." The appellant was readvised of his rights and told that he was suspected of wrongful "possession, use, [and] distribution of controlled substances" including "cocaine, methamphetamines, [and] hashish." The appellant waived his rights and reiterated his admissions of 6 May but identified yet additional individuals to whom he had distributed controlled substances.

With respect to the appellant's second statement of 6 May 1988, the military judge granted the appellant's motion to suppress. He specifically found that "no promises, threats, offers of lenient treatment or possible immunity" were made. However, he ruled that, as a matter of law, distribution of cocaine and methamphetamine is a "substantially different offense than possession of hashish" and required a readvisement of rights with notice to the appellant that he was suspected of distribution of controlled substances. He made an additional finding of fact that the participation of CPT Paulo during the second segment of the appellant's interview injected subtle and obvious command pressures into the interrogation. Thus, his ruling affected only those statements made dur-

ing the second segment of the 6 May interview.

With respect to the appellant's statement of 12 May, the military judge denied the appellant's motion to suppress. Although the military judge found as a matter of fact that the rights advisement of 12 May did not include a "cleansing" statement regarding the second segment of the statement of 6 May, he ruled that it nevertheless satisfied the requirements of the law and that the appellant's waiver was knowing and intelligent. He further ruled that the illegality which prompted suppression of the statement of 6 May did not create a "presumptive taint" as to the statement of 12 May because the illegality existed only with respect to the lack of a rights advisement.

Our review of the evidence of record and the inferences to be drawn therefrom requires modification of the rulings of the military judge below. His rulings were based on the facts and law of the case as presented by counsel whose presentation somewhat obscured the issues presented by the facts.

## II

■■■ With respect to the appellant's statement of 6 May, we find that the initial rights warning for suspected use of hashish was sufficient to encompass all incriminating statements relating to criminal offenses involving controlled substances. Article 31(b), UCMJ, does not require investigators to "spell out the details of [an accused's] connection with the matter under inquiry with technical nicety." *United States v. Rice*, 29 C.M.R. 340, 342 (C.M.A. 1960). *Accord United States v. Quintana*, 5 M.J. 484 (C.M.A.1978). This requirement is only intended "to orient an accused or suspect as to allow him to intelligently weigh the consequences of responding to an investigator's inquiries." *United States v. Reynolds*, 37 C.M.R. 23, 25 (C.M.A.1966). Thus, it is enough if the accused knows the general nature of the offense under investigation. *United States v. Davis*, 24 C.M.R. 6, 8 (C.M.A.1957). The legal sufficiency of advice on the nature of the charge is deter-

mined on the basis of the totality of the circumstances. *See United States v. Davis*, 24 C.M.R. at 8.

The investigation in the case at bar was focused upon controlled substances and the appellant was well aware of this fact from the rights advisement. The evidence of record clearly establishes that the appellant appreciated the criminality of possessing hashish, cocaine and methamphetamine and the criminality of distributing these substances. The appellant testified on the motion that he had recognized the difference between possessing and distributing controlled substances and that he had initially weighed the consequences of his disclosures but had revealed his activities because he believed that his comments would not be used in evidence against him. Therefore, we conclude that the investigator's failure to readvise the appellant of his rights for the offense of distribution of controlled substances in this case did not violate the Article 31(b), UCMJ, requirement that a suspect be advised of the offenses under investigation.

Nevertheless, we agree with the military judge that the appellant's second statement of 6 May was inadmissible at trial. The prosecution has the burden of establishing a valid rights waiver by a preponderance of the evidence. Mil.R.Evid. 304(e)(1); *see Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Girard*, 49 C.M.R. 38 (C.M.A. 1975). In the case at bar, the Government has failed to satisfy this burden.

■■■ In determining whether there has been a valid waiver, a court must focus on the perceptions of the accused. *See Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). A court may find a valid waiver only where the totality of the circumstances reveals *both* an uncoerced choice *and* the requisite level of comprehension of the nature of the right and the consequences of a decision to abandon those rights. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986).

■ The prophylactic rule announced in *Miranda* and adopted to military practice in *Tempia* was not intended to restrict the traditional form of police interrogation. *Moran v. Burbine*, 475 U.S. at 426, 106 S.Ct. at 1143. Thus, the use of trickery, artifice and subterfuge by investigators in obtaining a substantive statement from an accused is permissible so long as it does not violate the due process standards of voluntariness. *New York v. Quarles*, 467 U.S. 649, 661, 104 S.Ct. 2626, 2634, 81 L.Ed.2d 550 (1984); *United States v. McKay*, 26 C.M.R. 307 (C.M.A.1958). However, the use of such tactics in obtaining a waiver of rights or in dissuading invocation of rights is not permissible. *United States v. McKay*, 26 C.M.R. 307 (C.M.A.1958); *see Moran v. Burbine*, 475 U.S. at 421, 106 S.Ct. at 1140. *See generally Oregon v. Elstad*, 470 U.S. 298, 307, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985) (the voluntariness of an accused's waiver of rights and the voluntariness of an accused's substantive statements are two distinct inquiries). An interrogation "may not be utilized to dissuade a suspect from exercising his or her rights." *United States v. Whitehead*, 26 M.J. 613, 619 (A.C.M.R.1988).

■ As indicated by our analysis above, the appellant's initial waiver of his rights with respect to the offense of unlawful possession of hashish would have sufficed to establish a valid waiver of his rights with respect to the distribution offenses. However, we find that subsequent conduct by Investigator Stroud vitiated the effectiveness of the original rights warning. Thus, his initial waiver does not suffice to establish a valid waiver as to the appellant's second statement. Accordingly, the prosecution has failed to meet its burden of proof to show a knowing voluntary waiver of the appellant's Article 31(b) rights.

The appellant's admission that he had sold drugs to named individuals was a significant event punctuated by a brief cessation in interrogation during which Investigator Stroud left the room. Stroud's statement on his return, "I should probably advise you of your rights for distribution," suggested to the appellant that a separate rights warning was in order for the suspected offenses of distribution of controlled substances and emphasized the fact that a separate rights warning would not be given. The appellant could have perceived his disclosures as being made without the benefit of a proper rights advisement. We find that the appellant in fact concluded that his statements would not be admissible against him in a court-martial proceeding, an impression shared by CPT Paulo.[4]

This conclusion was entirely reasonable under the circumstances. In CPT Paulo's presence, Investigator Stroud stated, "Your commander is here, and he very much wants to know what's going on in the battery ... if you cooperate by providing information, he's going to look very favorably on you," or words to that effect.[5] The investigator manifested a desire to obtain

4. The appellant testified:
Because of the lack of a rights advisement, and because of the way the interview, if you want to call it an interview, was started out. It was more or less a talk. He just—wanted— he said he wanted to talk to me, and the battery commander wanted to talk to me. And then you know, he—nobody said that there would be anything used against me. There was nothing said about any charges being brought against me.

. . . . .

[Investigator Stroud's statement] made me feel like they just wanted to find out what was going on in the unit and that I wasn't going to be prosecuted, that I wasn't going to get in trouble for what I said.
Upon examination by the court, the appellant reiterated that he felt that he did not "have any worry about talking because [he] knew that they had not read [him] his right so they couldn't use [his statement] against [him]."

5. We find that Investigator Stroud did in fact make this statement. Although Investigator Stroud testified that he had not made such a statement, the military judge did not enter a finding of fact whether the statement was made or not. The military judge did rule that no offers of lenient treatment or of immunity were made; however, it is unclear whether this ruling was based upon a finding of fact that the statement had not been made or upon a finding of law that the statement did not constitute unlawful influence or unlawful inducement. The facts and circumstances of the case at bar do not require this court to consider the legal issue of whether Investigator Stroud's statement alone constituted unlawful inducement or unlawful influence.

information on other drug abusers and a need to verify the source of the appellant's information. Although Investigator Stroud did not intend to do so, he nevertheless created the perception that the appellant's remarks would be "off the record" because the investigators had decided to forgo evidence of appellant's misconduct in order to obtain information concerning misconduct by others.

Under these circumstances, we find that the element of the rights advisement which admonishes an accused that his statements may be used in evidence against him was vitiated and that the "waiver" evidenced by his decision to discuss his drug distribution activities was not made with a "full awareness" of the "consequences of his decision." *See Moran v. Burbine,* 475 U.S. at 421, 106 S.Ct. at 1141. Accordingly, the ruling of the military judge suppressing the appellant's second statement of 6 May 1988 was correct.

### III

■ With the foregoing analysis of the appellant's second statement of 6 May in mind, we now consider the appellant's contention that the military judge erred in denying the motion to suppress the statement of 12 May 1988.

Under Military Rules of Evidence 304 and 305, statements taken in violation of Article 31, UCMJ, are deemed "involuntary" and not merely "inadmissible." Mil. R.Evid. 305(a), & 304(c)(3).[6] Because the appellant's statement of 6 May was involuntary within the meaning of the rules of evidence, the appellant contends that his statement of 12 May was "derivative evidence" of his involuntary statement of 6 May.

The appellant's statement of 12 May was not derivative evidence (fruits of the poisonous tree) in the *Wong Sun,*[7] Fourth Amendment sense; rather, it was the appellant's own incriminating statement. *See generally Oregon v. Elstad,* 470 U.S. at 308–309, 105 S.Ct. at 1292–93. Therefore, the presumption that derivative evidence is tainted does not apply. *United States v. Spaulding,* 29 M.J. 156, 161 (C.M.A.1989). The appellant's admissions of 12 May were inadmissible only if they were the product of the earlier violation of Article 31(b). *Id.* Therefore, the appellant's statement of 12 May must be reviewed to determine whether the illegality which attended his statement of 6 May affected the voluntariness of his waiver of his rights under Article 31(b) on 12 May. *See United States v. Spaulding,* 29 M.J. at 161.

We have found that the appellant's statement of 6 May was inadmissible because his purported waiver of his rights was made without the requisite level of comprehension of the consequences of a decision to abandon those rights, specifically the fact that he did not perceive or otherwise comprehend that any statement he made could be used as evidence against him in a court-martial. His statement of 12 May was preceded by a proper rights advisement which included notice that the offense under investigation was distribution of controlled substances and that any thing he said could be used as evidence against him in a court-martial. While this rights advisement did not include any form of "cleansing statement," it was in our view sufficient to attenuate any residual impression which may have persisted from Investigator Stroud's previous statements in the case. The appellant's testimony at trial establishes that he made an informed, voluntary decision to forgo his rights.

---

**6.** In *United States v. Ravenel,* the lead opinion stated that the promulgation of these rules as an exercise of Presidential power under Article 36 of the Code, 10 U.S.C. § 836 created an "additional safeguard" for soldiers that had been specifically rejected by the Supreme Court. *United States v. Ravenel,* 26 M.J. 344, 349 (C.M.A.1988). *Compare Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). *Ravenel* held that this additional safeguard consists of a presumption that any subsequent statement made

by an accused is tainted where the accused's initial statement was made without the benefit of the required rights warning. *United States v. Ravenel,* 26 M.J. at 347–349. *Contra Oregon v. Elstad, supra.* The Court of Military Appeals has since modified this holding. *United States v. Spaulding,* 29 M.J. 156 (C.M.A.1989).

**7.** *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In so ruling, we have considered the appellant's testimony that he was not verbally advised of his rights on 12 May, that investigators commented on his rights, and that investigators told him that his second statement of 6 May was admissible against him. We have also considered the appellant's testimony to the effect that on 6 May investigators relayed a message from the battalion commander that "[I]f I didn't tell him everything I knew, I was going to be in serious trouble," and his testimony that he did not appreciate that his statements of 12 May could be used against him until the interview had ended. We agree with the military judge that the appellant's testimony regarding these matters was simply not credible.

The appellant's allegation of error raised under *United States v. Grostefon,* 12 M.J. 431, 436 (C.M.A.1982), was included in the allegations of error raised by his appellate counsel and decided in the principal opinion of the court.

The findings of guilty and the sentence are affirmed.

WERNER and KANE, JJ., concur.