# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38906**

————————————

**UNITED STATES**
*Appellee*

v.

**Ryan A. CAMPBELL**
First Lieutenant (O-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 April 2017

————————————

*Military Judge:* Natalie D. Richardson.

*Approved sentence:* Dismissal. Sentence adjudged 6 June 2015 by GCM convened at Los Angeles Air Force Base, California.

*For Appellant:* Major Virginia M. Bare, USAF; Major Lauren A. Shure, USAF; Major Jeffrey A. Davis, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and MINK, *Appellate Military Judges.*

Chief Judge DREW delivered the opinion of the court, in which Judge MINK joined. Senior Judge J. BROWN filed a separate opinion concurring in part.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

DREW, Chief Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of three specifications of wrongful use of 3, 4-methylene-dioxymethamphetamine (ecstasy) and one specification of divers wrongful use of amphetamine in the form of Adderall, in violation of Article 112a, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 912a; and one specification of solicitation to distribute ecstasy, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] The court-martial sentenced Appellant to a dismissal. The convening authority approved the adjudged sentence.

Appellant raises several assignments of error on appeal: (1) whether the military judge abused her discretion in not suppressing Appellant's oral and written statements to the Air Force Office of Special Investigations (AFOSI); (2) whether the Government failed to adequately corroborate Appellant's confession;[2] (3) whether the military judge abused her discretion in not suppressing evidence derived from a search of Appellant's cell phone; (4) whether the military judge erred in denying a Defense challenge for cause of Captain TA; (5) whether the military judge erred in overruling defense counsel's objection to trial counsel's sentencing argument; and (6) whether the military judge erred in giving the Air Force Trial Judiciary mandated reasonable doubt instruction.[3] We find no error materially prejudicial to a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

Since graduating from the Air Force Academy, Appellant used ecstasy on three occasions with a couple of his former classmates, now active duty lieutenants, and used Adderall on several occasions while studying for the Grad-

---

[1] The military judge granted a motion for a finding of not guilty, in accordance with Rule for Court-Martial 917, as to a specification of wrongful use of cocaine, and the court-martial acquitted Appellant of an additional specification of wrongful use of ecstasy and two specifications of solicitation to distribute amphetamine in the form of Adderall.

[2] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). As the Government pointed out in its Answer to Appellant's Assignment of Error, Appellant's counsel failed to identify this *Grostefon* error with particularity, listing the issues and arguments by Appellant, if any, as required by Rule 15.1 of this court's Rules of Practice and Procedure. Despite the Government raising this oversight, Appellant's counsel chose in Appellant's Reply Brief not to supplement their bare assertion of this error. The military judge adequately addressed the corroboration issue and the record, in particular Appellate Exhibit XXIII, more than sufficiently establishes that Appellant's admissions and confessions were adequately corroborated. The issue does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[3] Consistent with *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), we find that, absent objection at trial, the instruction did not constitute plain error.

uate Management Admission Test. He also solicited one of the lieutenants by text message to get him some ecstasy.

When his text messages were uncovered on one of the lieutenants' phone, Appellant was called in by AFOSI and confronted with the digital evidence of his drug involvement. After a somewhat problematic rights advisement by AFOSI, Appellant voluntarily confessed and relinquished his cell phone for a search.

## II. DISCUSSION

### A. Appellant's Statements to AFOSI

Appellant argues that the military judge abused her discretion when she failed to suppress his statements to investigators. Appellant asserts that, after initially waiving his right to counsel and his right to remain silent, he subsequently requested counsel when the investigators asked him if he was willing to submit to a polygraph and that his request for counsel was not honored by the investigators. Appellant also contends that the investigators created a coercive atmosphere during the interview, rendering his statements involuntary. We disagree that Appellant unambiguously invoked counsel or that the conditions of the interview rendered his statements involuntary, and find that the military judge did not abuse her discretion by failing to suppress Appellant's statements. While not directly raised by Appellant, we are however troubled by the investigators' actions prior to advising Appellant of his rights, which came all too close to undermining the intended effectiveness of the advice.

"A military judge's denial of a motion to suppress a confession is reviewed for an abuse of discretion." *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)). The military judge's findings of fact are upheld unless they are clearly erroneous or unsupported by the record; however, we review de novo any conclusions of law in a denial of a motion to suppress a confession. *Id.* "A military judge abuses [her] discretion when: (1) the findings of fact upon which [she] predicates [her] ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if [her] application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis,* 68 M.J. 341, 344 (C.A.A.F. 2010). "On questions of fact, [we ask] whether the decision is reasonable; on questions of law, [we ask] whether the decision is correct." *United States v. Baldwin*, 54 M.J. 551, 553 (A.F. Ct. Crim. App. 2000) (alteration in original), *aff'd,* 54 M.J. 464 (C.A.A.F. 2001).

When analyzing the voluntariness of Appellant's statements to investigators, we review the totality of the circumstances to determine whether his "will was overborne and his capacity for self-determination was critically impaired." *Chatfield,* 67 M.J. at 439 (quoting *United States v. Bubonics*, 45 M.J. 93, 95 (C.A.A.F. 1996)). We evaluate "both the characteristics of the accused and the details of the interrogation." *Id.* (quoting *Bubonics*, 45 M.J. at 95); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973). We consider an appellant's "age, education, experience, and intelligence as part of the circumstances bearing on the question whether a statement was voluntary." *Id.* at 439–40.

### 1. Article 31 Rights Advisement—Nature of the Accusation

After a brief rapport-building session, one AFOSI special agent, SA1, in the presence of another who mostly took notes, engaged Appellant in a discussion leading up to reading Appellant his Article 31 rights. A portion of the video recording of the interview was introduced into evidence and played for the members.[4]

---

[4] Prosecution Exhibit 4 is a DVD data disk, reflecting a redacted version of Appellant's AFOSI interview that was admitted into evidence. We note that the copy of Prosecution Exhibit 4 placed in the original Record of Trial was erroneously a duplicate of Prosecution Exhibit 3 (another DVD data disk). However Appellate Exhibit XIV, the unredacted version used during the motions hearing, and the parties' copies of Prosecution Exhibit 4 were correct. We have substituted the correct version of Prosecution Exhibit 4 in the Record of Trial for the erroneous copy. Court Reporters and military justice personnel at the trial level are advised to review all digital media in the original and all copies of Records of Trial to ensure they contain what they purport.

The record of trial includes a transcription of Prosecution Exhibit 4. Like the military judge below, we have access to the recording. We have reviewed the transcript alongside the video recording. While the transcript is substantially verbatim, it is incomplete. Words, typically filler words or repeated phrases, are at times omitted. In order for courts and other reviewing authorities to properly fulfill our statutory and regulatory responsibilities, it is essential that transcriptions of critical evidence, such as interviews of subjects and complaining witnesses, be as accurate as possible and not "cleaned up." Especially, as here, where a court must carefully evaluate the voluntariness of a subject interview, precision in reflecting the exact words spoken is key. Applying Article 66(c), 10 U.S.C. § 866(c), we find that the quotations cited in the opinion accurately reflect the actual words spoken during Appellant's AFOSI interview.

Prior to the rights advice, which SA1 read from a standard Advisement of Rights (For military personnel) card, SA1 indicated that AFOSI was investigating a number of people and they needed to talk to Appellant:

**SA1:** Yeah like I said there's a lot of stuff that I want to talk to you about, and there's a lot of stuff that, ah, ah, doesn't deal with you directly at all, it deals with, more so, other people.

**Appellant:** Okay.

**SA1:** But in order to speak with you about some of that stuff, um, it's kind of like an umbrella catch-all. So I've got to at least let you know, ah, what you're in here for, and I've got to let you know some of the things that I'm going to talk to you about. And I'm going to do that, ah, but, um, I have to get through kind of the umbrella catch-all. So, some of the stuff that I'm going to brief you on doesn't necessarily pertain to you, kind of pertains to other people. But, because I'm asking you questions in that arena I have to, I have to allow you to know that, right? And I'm going to do that in the means of letting you know what your rights are while you're over here.

Cause, ah, I mean you're over at OSI, right? So, I mean, we can't just, ah pull people in here that don't want to be in here, right? You're just off the street. You have, you have your rights so I'm going to let you know them.

**Appellant:** Am I being charged with something?

**SA1:** Um—I'm going to ask you some questions.

**Appellant:** Okay.

**SA1:** About—like I said some of the stuff to deal with other people, but—in order to do that, I have to read you your rights. So, right now, um, I'm not saying that you did any of this stuff, I'm not saying that you're guilty of any of this stuff. I'm just saying that in order to speak with you about it, I have to advise you of your rights.

**Appellant:** Okay.

**SA1:** So does that make sense?

**Appellant:** Yeah.

**SA1:** Sometimes even commanders, if they're doing some sort of—like if your commander, your supervisor, or whoever was to talk to you about something that maybe you or your friend or somebody else did, they would still have to read you your

rights. They're not law enforcement, they're not DoD police, they're not OSI, but they still have to read you your rights.

**Appellant:** Uh, hum.

**SA1:** So, were you aware of that?

**Appellant:** I was not.

**SA1:** Okay—So I'm going to go ahead and do that, ah, right now. I'm going to read it off the card here before we—

> Okay, so I am [SA1], a member of the Air Force Office of Special Investigations. I am investigating the alleged offense of Article 112(a) wrongful use, possession of a controlled substance, and Article 82, solicitation of a controlled substance, of which you are suspected.

> I advise that under the provisions of Article 31, UCMJ, you have the right to remain silent, that is say nothing at all. Any statements you make, oral or written, may be used as evidence against you in trial by courts-martial, or in other judicial or administrative proceedings.

> You have the right to consult a lawyer and to have a lawyer present during this interview. You have the right to military legal counsel free of charge. In addition to military counsel you are entitled to civilian counser [sic], counsel of your own choosing, at your own expense. You may request a lawyer at any time during this interview. If you decide to answer questions you may stop the inter–, questioning at any time.

Do you understand your rights?

**Appellant:** Yes.

**SA1:** Do you want a lawyer?

**Appellant:** [Pause] I don't know.

**SA1:** You don't know. Okay, unfortunately, um, I can't keep explaining some of the things that I've got in front of me, um, unless you choose to sit in here and discuss them with us. So, um, it's kind of—there's really no middle ground on that. So I'll ask you again, or if you need a couple of minutes or something I can give it to you. But, um, it kind of has to be a "yes" or a "no" answer.

**Appellant:** No, I'll talk about it.

> **SA1:** You'll talk about it for a little bit?

> **Appellant:** [Nodding affirmatively]

Article 31(b), UCMJ, 10 U.S.C. § 831(b), states:

> No person subject to [the UCMJ)] may interrogate, or request any statement from an accused or a person suspected of an offense *without first informing him of the nature of the accusation* and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

(Emphasis added.)

The Article 31(b) requirement to advise a suspect of the nature of the accusation is unique to military practice. There is no civilian counterpart in *Miranda v. Arizona*, 384 U.S. 436 (1966). *See United States v. Tempia*, 37 C.M.R. 249, 264 (C.M.A. 1967) (Quinn, CJ, dissenting). In advising a suspect of his Article 31(b) rights, the

> [a]dvice as to the nature of the charge need not be spelled out with the particularity of a legally sufficient specification; it is enough if, from what is said and done, the accused knows the general nature of the charge. . . . A partial advice, considered in light of the surrounding circumstances and the manifest knowledge of the accused, can be sufficient to satisfy this requirement of Article 31.

*United States v. Simpson*, 54 M.J. 281, 284 (C.A.A.F. 2000) (omission in original) (quoting *United States v. Davis*, 24 C.M.R. 6, 8 (C.M.A. 1957)). However, a suspect must be informed of the general nature of the allegation, including the area of suspicion that focuses him toward the circumstances surrounding the event in which he is allegedly involved. *Id.*

In this case, the nature of the accusation as described by SA1 to Appellant while the agent read from a rights advisement card would appear to be more than sufficient: "Article 112(a) wrongful use, possession of a controlled substance, and Article 82, solicitation of a controlled substance, of which you are suspected." However, prior to reading Appellant his rights, SA1's preliminary comments could have created the impression that Appellant was being interviewed as a witness, *not a suspect*. For example, SA1 told Appellant that there was "a lot of stuff" that he wanted to talk to him about and "there's a lot of stuff that, ah, ah, doesn't deal with you directly at all, it deals with, more so, other people." He also twice used the term "umbrella catch-all," to explain the forthcoming rights advisement, suggesting that the rights advisement

concerned, at least in part, "*some* of the stuff that I'm going to brief you on [that] doesn't *necessarily* pertain to you." (Emphasis added.) At best, SA1 created an ambiguity as to the nature of the accusation *against Appellant*, as opposed to "other people."

Article 31(b) requires that a suspect be informed of the general nature of the allegation *against him* that focuses him toward the circumstances surrounding the events in which *he* is allegedly involved. *Davis*, 24 C.M.R. at 8. Inherent in advising a suspect of the nature of an allegation is advising the suspect that *he* is suspected of something (as opposed to other people being suspected). Anything that shifts that focus potentially undermines this unique aspect of Article 31(b) and, if sufficiently confusing, would invalidate the subsequent rights advisement.

An investigator's use of trickery, artifice, or subterfuge in obtaining a confession is generally permissible, as long as the tactic does not result in coercion or an otherwise involuntary statement within the meaning of the Due Process Clause.[5] *See, e.g.*, *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (false statement that coconspirator had confessed did not render confession involuntary); *United States v. McKay*, 26 C.M.R. 307, 311 (C.M.A. 1958) (feigned threat to use a polygraph to prove accused's denials were false did not render subsequent confession involuntary); *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998) (false statement that officers recovered suspect's fingerprints in victim's house did not render confession involuntary). *See generally United States v. Erie*, 29 M.J. 1008, 1012 (A.C.M.R. 1990). However, an investigator's use of such tactics in securing a rights waiver or in discouraging an invocation of rights invalidates the waiver and is clearly improper. *Id. Cf. United States v. Whitehead*, 26 M.J. 613, 619 (A.C.M.R. 1988) (after suspect's equivocal request for counsel, "Maybe I should get a lawyer" investigator improperly dissuaded him from unequivocally invoking counsel by telling suspect "if you didn't do anything wrong, . . . you don't need one, right?").

If this court were to focus strictly on SA1's reading from the rights advisement card, we would have no trouble in finding a clear waiver of Appellant's rights. However, the court must consider the totality of the circumstances to determine whether Appellant waived his rights, not just the talismanic recitation of words from a card. "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived [his] rights . . . ." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The court's

---

[5] U.S. CONST. amend. V.

determination of a valid waiver, just as in the *Miranda* setting, is a two-step process:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

This case gives us serious concern that SA1's comments prior to formally advising Appellant of his Article 31 rights might have inoculated Appellant to disregard the warning he was about to receive. If they did, whether resulting from intentional deception or inadvertent unartfulness, Appellant would not have made a free and deliberate choice in relinquishing his rights. In addition, if Appellant was led to believe that, notwithstanding the words from the card, he was not really under suspicion, he would not have made his subsequent waiver with a full awareness of the consequences of his decision to abandon his rights.[6]

For example, if the special agent had said: *"I'm about to read from a card. I'm going to tell you I suspect you of something, but I really don't. You can just disregard that."* then there would be no question that the special agent's subsequent rendition "of which you are suspected" would not have satisfied

---

[6] We focus only on the second part of step two of the *Moran v. Burbine* two-step analysis because the special agent's pre-advisement statements did not minimize the *nature of the rights* that Appellant was abandoning. For example, the agent did not tell him that if he chose to remain silent the government would compel him to speak anyway, or tell him that even though he had a right to counsel, a lawyer would not do him any good if he asked for one. Thus, when the agent read from the rights advisement card, nothing in the record indicates that Appellant was not fully aware of the nature of his rights. The problem with the special agent's pre-advisement statements, in addition to potentially negating the Article 31(b) nature of the accusation advice requirement, is their tendency to minimize the *consequences of abandoning his rights. Cf. United States v. Whitehead*, 26 M.J. 613, 619 (A.C.M.R. 1988) ("[I]f you didn't do anything wrong, . . . you don't need [a lawyer], right?").

Article 31(b)'s requirement to inform Appellant of the nature of the allegation against him.

The question therefore is whether the special agent's use of the minimizing term "umbrella catch-all" and emphasizing that "a lot of stuff" that he wanted to talk to him about "deals with, more so, other people" was the functional equivalent of telling Appellant that, "*I'm going to tell you I suspect you of something, but I really don't.*" In evaluating whether Appellant freely and deliberately waived his rights with full awareness of the consequences of doing so, we focus primarily upon the perceptions of Appellant, rather than the intent of the special agent. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Since Appellant did not testify on the motion challenging the voluntariness of his statements to AFOSI, the military judge and this court are limited to examining the video recording of his interview. This court must determine whether Appellant understood the nature of the allegation against him before we can determine whether his waiver was voluntary, in light of the conflicting advice given to him by the special agent.

After SA1 read Appellant his rights from the card, the agent asked him, "Do you want a lawyer?" Appellant, after a pause, responded "I don't know." Appellant's hesitation to continue with the interview immediately after SA1 read him his rights suggests that Appellant was aware that there were consequences to abandoning his rights. In addition to what SA1 told him that AFOSI was investigating, Appellant himself was aware of his activities involving the use and solicitation of controlled substances. This is not a situation in which an accused may be unclear that his prior conduct might be illegal and the subject of a criminal investigation. Appellant was an Air Force officer and graduate of the Air Force Academy, who was nearly 25 years old at the time of the interview. He was well aware that his actions violated the UCMJ. Under the unique facts of this case, and this particular accused, we conclude that Appellant understood that he was a suspect and the nature of the allegations against him, and he appreciated the consequences of waiving his rights and agreeing to answer the investigator's questions.

Nevertheless, had additional evidence been admitted to establish that at the time of his rights waiver, Appellant actually believed that he was *not* under suspicion, this court might likely have come to a different result. We would like to clearly and unequivocally emphasize that when reading a suspect his or her rights, criminal investigators are not authorized, and have no legitimate purpose, to create confusion about any aspect of the rights advice, including the nature of the allegation. While the law may allow investigators to use deceit during other portions of an interview, the rendering of rights advice must be clear, honest, and understandable.

### 2. Invocation of Counsel

Invocation of the right to counsel "requires, at a minimum, some statement by an accused that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). "Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease." *Smith v. Illinois*, 469 U.S. 91, 98 (1984). Statements subsequent to a clear invocation of counsel may not be considered in determining whether the invocation was ambiguous. *Id.* Reviewing courts may, however, consider statements and events immediately preceding the invocation, as well as "nuances inherent in the request itself." *Id.* at 99; *United States v. Delarosa*, 67 M.J. 318, 324 (C.A.A.F. 2009).

The determination of whether an invocation is unambiguous (requiring the agents to immediately terminate the questioning) or ambiguous (permitting further clarifying questions) is an objective inquiry based upon how a "reasonable officer" would view the comments. *Davis v. United States*, 512 U.S. 452, 459 (1994); *see also United States v. Lovely*, 73 M.J. 658, 672 (A.F. Ct. Crim. App. 2014). If an accused is indecisive in his request, questions regarding whether he did or did not waive counsel "must necessarily be left to the judgment of the interviewing Agent." *Miranda*, 384 U.S. at 485.

Once an accused unambiguously requests counsel, "courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith*, 469 U.S. at 95.

After he was read his rights, Appellant initially indicated that he did not know if he wanted a lawyer. Once SA1 clarified with him that he needed either a "yes" or "no" answer, Appellant unambiguously indicated that he wanted to talk, waiving his right to consult with a lawyer at that time. Later in the interview, SA1 asked Appellant if he was willing to take a polygraph examination, and the following discussion ensued:

> **SA1:** Would you be willing to take a poly?
>
> **Appellant:** I want to talk to lawyer first.
>
> **SA1:** Before the poly?
>
> **Appellant:** Yeah.
>
> **SA1:** Okay.
>
> **Appellant:** I just, I mean, I'm in the corner by myself with no idea what I'm doing. I've been in situations in the past where,

I've been accused of things and I, didn't consult legal advice and I regret it.

**SA1:** Okay, then I'm going to see um—cause we're gonna have to do a couple things out here, other than, other than that, as far as like fingerprints and stuff so, we're going to get that stuff going and then, um, we'll be back in here in a second and we'll—

[SA1 leaves interview room]

**SA2:** Hold on a sec. You need to use the restroom Lieutenant?

**Appellant:** I could use some water.

**SA2:** Some water? I can get you some water. Hold on a sec. I'll be right back—two seconds.

[SA2 leaves interview room]

[SA1 and SA2 reenter interview room approximately five and one-half minutes later and hand Appellant a bottle of water]

**SA1:** If your good with—we'll push the, as far as the—if, if you do want to ask about that you can as far as a lawyer with the polygraph, and we can set that up at a later time, but, um, as far as just hanging out, um, for a couple minutes longer—are you okay to hang out here and talk to us a little bit more?

**Appellant:** Uh hum.

**SA1:** Alright.

Appellant made a conditional request for counsel. Specifically, he indicated that he wanted to talk to a lawyer before deciding whether to take a polygraph.[7] The agents left him alone for over five minutes, giving him plenty of time to fully consider his options. Once the agents returned, SA1 asked him a clarifying question to be perfectly sure that Appellant was willing to continue the interview before consulting counsel. While the conditional nature of Appellant's request for counsel was clear, given his musing about having been in situations in the past when he did not consult legal advice and regretted it, it was certainly prudent and proper for SA1 to clarify Appellant's desire to speak with counsel.

---

[7] That the investigators suggested to Appellant that a polygraph examination was set up, when in fact it was not, did not render his subsequent statements involuntary. *McKay*, 26 C.M.R. at 311.

A conditional invocation of counsel does not prohibit investigators from either clarifying the condition or continuing with an interview if the subject's condition is honored. *See Connecticut v. Barrett*, 479 U.S. 523, 529 (1987) (subject's expressed desire for the presence of counsel only in the event he had to make a written statement did not prohibit investigators continuing to interview him without taking a written statement); *United States v. Jacobs*, 97 F.3d 275, 280 (8th Cir. 1996) (subject's statement that he would want a lawyer if he had to take a polygraph test did not preclude investigators continuing to interview him and take his confession).

Although Appellant's response on the video recording to SA1's clarifying question was somewhat obscured (Appellant was drinking from a water bottle at the time), applying our fact-finding authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we find that Appellant indicated his continuing willingness to speak with AFOSI without first consulting counsel and that his invocation of counsel was limited to the specific purpose of talking with a lawyer before agreeing to a polygraph.

### 3. Coercive Atmosphere of Interview

Appellant alleges that AFOSI made "significant threats" to him during the interview that caused his statements to be involuntary. In particular, Appellant points to SA1's comment: "probably rip the bars right off of your chest if this stuff goes up if you don't want to say anything about it." However, the atmosphere of the interview room was relaxed when SA1 made the comment. He was not raising his voice. Appellant was sitting diagonally away from him, with a small desk between them, and SA1 was not even looking in his direction. He was looking down, apparently at a copy of Appellant's text messages, and he made the statement in a rather matter-of-fact way.

Prior to making the statement, SA1 had discussed how the Air Force was currently going through "force shaping cuts," in which officers were being selected for involuntary separation and that now was not a good time to not tell the truth. "But it's up to you." The implication SA1 made was that if Appellant continued to lie, "people with lots of stars, and even people that don't have those stars" who would be receiving the AFOSI report, would likely force Appellant out of the Air Force and take away his rank. While saying that Appellant's bars would probably be ripped right off his chest was perhaps not the most artful way to put it, a review of the video recording reveals that SA1 did not make the comment in a physically threatening way and there is no indication that Appellant either took it that way or that his participation and discussion throughout the interview was coerced in any way. The interview eventually ended when Appellant said he wanted to talk to a lawyer.

In addition to being an experienced 24 year-old Air Force officer, Appellant played collegiate football at the Air Force Academy. At no point during the interview did he appear to be intimidated by the AFOSI agents and he had no hesitation in invoking his right to counsel, once he decided it was in his best interest to do so. Accordingly, we find that all of Appellant's statements to AFOSI were voluntary and free from coercion or unlawful inducement.

**B. Search of Appellant's Cell Phone**

A military magistrate authorized the search of Appellant's phone at 1345 hours on 10 January 2014 based upon probable cause to believe that evidence of Appellant's wrongful use, possession, and solicitation of controlled substances existed on the phone. At 1523 hours the same day, Appellant separately consented to the search of his phone and voluntarily provided the password for this phone to facilitate his consent. AFOSI seized Appellant's phone pursuant to both his consent and the search warrant. AFOSI completed its search of Appellant's phone when it made a digital copy of the phone on that date or shortly thereafter using a Cellebrite device. All subsequent examinations of evidence originally taken from Appellant's phone were of AFOSI's digital copy and not of Appellant's cell phone. On 24 January 2014, Appellant withdrew his consent to the search of his phone.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. CONST. amend. IV. Whether a search is "reasonable" depends, in part, on whether the person subject to the search has a subjective expectation of privacy in the thing to be searched, and that expectation is objectively reasonable. *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014). Evidence obtained as a result of an unlawful search is inadmissible against an accused if the accused (1) makes a timely objection, and (2) has an adequate interest, such as a reasonable expectation of privacy in the person, place, or property searched. Mil. R. Evid. 311(a).

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion, viewing the evidence in the light most favorable to the party prevailing below. *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016). We accept the military judge's findings of fact unless they are clearly erroneous or unsupported by the record; however, we review the

conclusions of law de novo. *Id*. Searches conducted pursuant to a warrant or authorization based on probable cause are presumptively reasonable, whereas warrantless searches are presumptively unreasonable unless they fall within a few specifically established and well-delineated exceptions. *Id*. at 123–24. Consent is a specifically established exception to both the warrant and probable cause requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "Property . . . may be seized with consent consistent with the requirements applicable to consensual searches under Mil. R. Evid. 314." Mil. R. Evid. 316(c)(3). "Consent [to search] may be limited in any way by the person granting consent, including limitations in terms of time, place, or property, and may be withdrawn at any time." Mil. R. Evid. 314(e)(3). The Government bears the burden of showing the applicability of the consent exception. *Hoffmann*, 75 M.J. at 124.

There is no reasonable expectation of privacy in a government-created copy of evidence that was lawfully seized, whether by consent or by a search warrant, and, in the case of consent, is not to be suppressed if the copy was created before the consent is revoked. *United States v. Lutcza*, ___ M.J. ___, Misc. Dkt. No. 2016-13, 2017 CCA LEXIS 28, at *8–12 (A.F. Ct. Crim. App. 18 Jan. 2017); *see also United States v. Ward*, 576 F.2d 243, 244–45 (9th Cir. 1978) ("[W]e agree with the district court that any evidence gathered or copies made from the records during the intervening five days [before consent was revoked] should not be suppressed."); *United States v. Ponder*, 444 F.2d 816, 818 (5th Cir. 1971), *cert. denied*, 405 U.S. 918 (1971) ("Ponder agreed to supply the records requested and voluntarily delivered them . . . . At that point there was a valid consent to search, which carries with it the right to examine and photocopy."); *Mason v. Pulliam*, 557 F.2d 426, 429 (5th Cir. 1977) ("This withdrawal [of consent] . . . does not affect the validity of [the agent's] actions prior to the time he received notice that his right to retain Mason's papers was gone. The district court correctly refused to require the return of copies made prior to the demand by Mason's attorney.")

The search of Appellant's cell phone was reasonable and the military judge did not abuse her discretion in refusing to suppress the results of the search.

**C. Challenge for Cause of Captain TA**

During voir dire, the Prosecution disclosed to the court members that SA1 would be testifying during the trial. A prospective court member, Capt TA, disclosed that she had previously served as a Sexual Assault Response Coordinator (SARC) and in that role had met SA1 at a joint SARC, AFOSI, and judge advocate conference, roughly three years prior to the court-martial. Capt TA indicated that she had very minimal contact with SA1 during the conference, had not had any subsequent contact with him, had not formed

any personal opinion of him, and was not likely to give his testimony any additional weight based on their contact. Appellant challenged Capt TA for cause on the basis of implied bias because she had met SA1 at a conference and had worked with sexual assault victims.

The military judge applied the "liberal grant mandate" and denied the challenge because Capt TA had no professional relationship with SA1, she had no personal opinion of him or other contact beyond the one conference, and her professional involvement with self-proclaimed victims of sexual assault is very far removed from any of the allegations or issues of this case. The military judge was convinced that anyone with full knowledge of this court-martial would have no concern with Capt TA's ability to be fair. Appellant exercised his peremptory challenge against Capt TA, but preserved the issue for appeal by indicating on the record that he would have exercised his peremptory challenge against another court member if the military judge had granted his challenge for cause.

R.C.M. 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008). The burden of establishing the grounds for a challenge for cause is on the party making the challenge. *United States v. Wiesen*, 57 M.J. 48, 49 (C.A.A.F. 2002).

The test for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)) (internal quotation marks omitted). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Id.* We review rulings on challenges for implied bias "under a standard less deferential than abuse of discretion but more deferential than de novo." *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (quoting *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)). Military judges apply a liberal-grant mandate in ruling on challenges for cause. *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "The liberal grant mandate recognizes the unique nature of military courts-martial panels, particularly that those bodies are detailed by convening authorities and that the accused has only one peremptory challenge." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006).

Like the military judge, we find no basis to question Capt TA's fairness based on her fleeting encounter with SA1 at an official conference three years prior to the court-martial. In addition, her previous duties as a SARC provide no basis whatsoever to question her suitability to serve as a court member in

Appellant's court-martial for the use and solicitation of distribution of controlled substances. The military judge was correct in denying the Defense challenge for cause.

## D. Trial Counsel's Sentencing Argument

The military judge instructed the members that the maximum punishment they could adjudge was forfeiture of all pay and allowances, confinement for 25 years, and a dismissal. The Government argued for a sentence of total forfeitures, confinement for six months, and a dismissal. During his sentencing argument, the second assistant trial counsel (ATC2) made the following argument:

> **ATC2:** Now, defense counsel is going to say, "Look, since the— since the investigation began he's been a good citizen; he's learned humility, he's all this," but—and *the accused said a lot of things, and I think what the accused said shows he still doesn't get it. Think about not just what the things he said, but what he didn't say.*
>
> **DC:** I'm going to object, Your Honor, commenting on an accused's right to remain silent.
>
> **MJ:** Not quite—we're not—we're not there yet. Overruled.
>
> **ATC2:** You know, the accused has every right to make us put the burden of proving our case, and we have the burden to put on the case. He also has the right to ask for leniency and mercy. But it's also important that you consider where that's merited in this case. And when you consider that he never—he never mentioned his crime, *he never took responsibility for his criminal conduct*, that mercy and leniency is not merited here.

(Emphasis added.) While defense counsel objected to the reference to "what [Appellant] didn't say," he did not object to ATC2's further argument that Appellant "never took responsibility for his criminal conduct."

"Improper argument involves a question of law that [we] review de novo." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). Error occurs when counsel fail to limit their arguments to "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Id.* Even within the context of the record, it is error for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (alteration in original) (quoting

*United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007)). On the other hand, trial counsel is expected to zealously argue for an appropriate sentence, so long as the argument is fair and reasonably based on the evidence. *United States v. Kropf*, 39 M.J. 107, 108 (C.M.A. 1994).

Where improper sentencing argument occurs, we must determine whether we can be confident that the appellant was sentenced on the basis of the evidence alone. *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013). When the defense has objected at trial, we review argument for prejudicial error. *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014). To the extent that trial defense counsel failed to object to an argument at trial, we review for plain error. *Marsh*, 70 M.J. at 104. To establish plain error, Appellant must prove (1) there was error, (2) it was plain or obvious, and (3) the error resulted in material prejudice. *United States v. Flores*, 69 M.J. 366, 369 (C.A.A.F. 2011). Regardless of whether there was an objection or not, in the context of a constitutional error, the burden is on the Government to establish that the comments were harmless beyond a reasonable doubt. *Id.*

An accused has a fundamental right to plead not guilty. Any comment on the exercise of that right by trial counsel is "intolerable." *United States v. Johnson*, 1 M.J. 213, 215 (C.M.A. 1975). Argument by trial counsel which comments upon an accused's exercise of his or her constitutionally protected rights is "beyond the bounds of fair comment." *United States v. Paxton*, 64 M.J. 484, 487 (C.A.A.F. 2007). However, if the proper foundation is laid, an accused's refusal to admit guilt or accept responsibility after findings may be an appropriate factor for the member's consideration in their sentencing deliberation on rehabilitation potential. *United States v. Garren*, 53 M.J. 142, 144 (C.A.A.F. 2000); *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992). "As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expression of remorse can be arguably construed as being shallow, artificial, or contrived." *Edwards*, 35 M.J. at 355. However, the inference that an accused is not remorseful may not be drawn from his decision to not testify or from his pleas of not guilty. *Id.*

Appellant made an oral unsworn statement before the court members. In context, it is apparent that when ATC2 said "the accused said a lot of things" in his sentencing argument, he was referring to Appellant's unsworn statement. Likewise when ATC2 said "Think about not just what the things he said, but what he didn't say," ATC2 was not referring to Appellant's exercise of his right to remain silent. Therefore, the military judge did not abuse her discretion in overruling defense counsel's objection to the argument.

With regard to ATC2's comment that Appellant "never took responsibility for his criminal conduct," that went without objection from trial defense

counsel, again it is clear that ATC2 was referring to Appellant's unsworn statement. In his statement, Appellant said several things that arguably expressed a degree of remorse: He said that although a guilty verdict was not the outcome he was hoping for, he understood and respected the members' decisions. He said that words cannot express the amount of shame he felt. He apologized to his parents for the burden that they have shared on his behalf and to anyone else who's had to share the burden with him. He said he could not describe the amount of humiliation he felt when he looked up at his commander after leaving the AFOSI interview room. He also made other comments suggesting that the decisions he had made will impact his future. Whether Appellant's statements truly evidenced remorse and taking responsibility, or were shallow and stopped short is a matter of argument. But what is clear is that ATC2 was making that argument, based on Appellant's unsworn statement and not on his exercise of his rights to plead guilty and to remain silent.

Assuming, arguendo, that ATC2's argument included improper comments on Appellant's exercise of his constitutional rights, we are nevertheless convinced that the comments were harmless beyond a reasonable doubt. Appellant, an officer, was convicted of multiple uses of controlled substances and of soliciting the distribution of additional controlled substances. His crimes were further aggravated by being committed with other Air Force officers. That he received a dismissal, a uniquely military punishment reserved for officers, was not surprising and fully appropriate for his offenses. The Government argued that he should also be confined and forfeit pay. However the members spared him those additional punishments. Having reviewed the entire record, we are convinced that Appellant was not prejudiced by ATC2's comments about Appellant not taking responsibility for his criminal conduct.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

J. BROWN, Senior Judge (concurring in part and concurring in the result):

I join my esteemed colleagues in all but a portion of their rationale regarding the search of Appellant's cellular phone. Although I agree that the military judge did not abuse her discretion in failing to suppress information obtained from Appellant's cellular phone, I base my conclusion on the existence of a valid search warrant for the phone—not on Appellant's initial consent to search the phone that was later revoked.

I write separately because I am skeptical of the majority's reliance on the holding of *United States v. Lutcza,* ___ M.J. ___, Misc. Dkt. No. 2016-13, 2017 CCA LEXIS 28 (A.F. Ct. Crim. App. 18 Jan. 2017) for the broad proposition that there is no reasonable expectation of privacy in a government-created version of digital evidence that was seized pursuant to an accused's consent where an accused later revokes that consent. Though *Lutcza* was a published decision from another panel of this court, my hesitation stems from my concern that the opinion did not fully address the potential implication of Military Rule of Evidence 314(e)(3) to its holding. That rule provides that consent may be withdrawn "at any time." A plain reading of the rule might suggest that an accused could indeed withdraw consent to future searches of forensically identical versions of an accused's computer files—regardless of whether a version of those files are located on electronic storage devices owned by an accused or the Government. Nevertheless, as there was a valid search warrant here, resolution of this more difficult issue is not necessary to dispose of this assignment of error.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court